CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 11 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLAS A. HOGLAN,<br>    Plaintiff, | Civil Action No. 7:13-cv-00258 |
| v. | **MEMORANDUM OPINION** |
| A. DAVID ROBINSON, et al.,<br>    Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed a verified Complaint and amendments pursuant to 42 U.S.C. § 1983, naming various staff of the Virginia Department of Corrections ("VDOC") as defendants. Defendants had filed a motion for summary judgment, which I denied as to claim 7, denied without prejudice as to Plaintiff's exhausted claims of retaliation due to the pendency of claim 7, directed Defendants to file a motion for summary judgment about claim 7, and granted the motion for summary judgment as to all other claims.[1] After reviewing Defendants' second motion for summary judgment and Plaintiff's response, I award summary judgment to Plaintiff on claim 7 against defendant Warden Young and determine that a jury is necessary to resolve factual disputes about defendant Regional Administrator Hinkle's deliberate indifference as to claim 7, the exhausted claims of retaliation related to claim 7 against defendants Officer Sutphin, Institutional Investigator Cartwright, Unit Manager Hall, and Senior Psychologist Boyd, and the amount, if any, of damages.

I.

Claim 7 concerns a brief ban on only Pocahontas State Correctional Center ("PSCC") inmates' receipt of commercial photographs. On March 27, 2012, Warden Young issued a

---

[1] Because Plaintiff's Complaint, amendments, and exhibits totaled nearly 400 pages, I will discuss in this opinion only those facts relevant for the disposition of claim 7 and related, exhausted claims of retaliation.

memorandum, informing PSCC inmates they would no longer be allowed to order commercially distributed photographs from any vendor. Citing Warden Young's memo, PSCC staff refused to order or deliver Plaintiff's requests for commercial photos, regardless to whether the photos contained "adult" content.

About six months later on October 12, 2012, Warden Young lifted the ban by a second memorandum, informing PSCC inmates that they would be allowed to order commercially distributed photographs from the online vendor Surrogate Sisters after verifying the company's licensure and that ordered items still needed to comply with VDOC Operating Procedure ("OP") 803.2, "Incoming Publications." On September 29, 2014, defendant A. David Robinson, the VDOC's Chief of Corrections Operations, issued a memorandum to remind wardens that all commercially distributed photographs are to be reviewed by facility staff and disapproved on a case-by-case basis to determine if they violate any of the criteria set forth in OP 803.2.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the

non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial.[2] Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### III.

Defendants argue that I should find claim 7 moot because the ban imposed on March 2, 2012, at PSCC was lifted about six months later; the VDOC Chief of Corrections Operations has since reiterated that wardens should follow VDOC OPs related to commercial photographs; and, upon counsel's information and belief, the VDOC has no future plan to ban commercial photographs coming into its facilities, stating that "although VDOC has the ability to change its own policy, it is not probable that they will do so." I find that claim 7 is not moot due to Plaintiff's claim for damages. Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 429 n.4 (4th Cir. 2007). Furthermore, I may not rely on counsel's belief that it is improbable that the VDOC will revive the ban. Wall v. Wade, 741 F.3d 492, 497-98 (4th Cir. 2014).

### IV.

In claim 7, Plaintiff alleges that defendants Young, Walz, Hinkle, Garman, A. Robinson, and Clarke violated Plaintiff's First Amendment right to receive publications in prison by banning all commercial photographs, including those without "adult" content.[3] For the following

---

[2] A plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

[3] In their first motion for summary judgment, Defendants argued that Plaintiff failed to exhaust administrative remedies. I concluded in the first memorandum opinion that, due to the disparity of the evidence and discrepancies in the VDOC's own records, Defendants had failed to establish that Plaintiff did not exhaust available administrative remedies about the ban challenged in claim 7. Nonetheless, I awarded summary judgment to

3

reasons, Plaintiff's claims against Warden Young and Regional Administrator Hinkle will proceed to trial.

Inmates retain protections afforded by the First Amendment, including the right to communicate beyond prison walls. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Procunier v. Martinez, 416 U.S. 396, 408-09 (1974). However, prisoner's rights are subject to prisons' institutional needs of security, discipline, and general administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). Consequently, it has been held that "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)).

Defendants argue that qualified immunity should shield them from damages in their individual capacities.[4] Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they may be held personally liable only for "transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Qualified immunity involves a two step inquiry: (1) whether a constitutional or statutory right would have been violated on the alleged facts, and (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). "Clearly established 'includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked.'" Wall, 741 F.3d at 502-03 (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

---

Defendants on the part of claim 7 that alleged defendant G. Robinson obstructed administrative remedies.
[4] Eleventh Amendment immunity protects Defendants in their official capacities from damages. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

4

A.

Defendants have not established any penological interest to warrant the wholesale ban and censorship of commercial photos for approximately six months at PSCC. The only rationale briefly mentioned for the ban was that "offenders are only allowed to order from an approved mail order vendor and it was not possible to verify the licensure of the online vendors that sold the commercially distributed photographs to PSCC." Defendants have not offered any reasoning to connect their alleged concern about unknown and unrelated persons' copyrights or licensing to an actual penological interest.[5] Consequently, Plaintiff has sufficiently established that Warden Young's ban violated Plaintiff's First Amendment right, but only as to the mundane photos of President Obama, the Pope, John Wayne, and former Virginia Governor Robert McDonnell that Plaintiff tried to order.[6] ECF No. 60-3, page id. no. 949.

Furthermore, Defendants do not offer any case law for the proposition Warden Young did not violate clearly established law. Indeed, case law supports holding that Warden Young's overly broad ban on commercial photos was clearly violative of established law. See, e.g.,

---

[5] Without any such penological justification, I am unable to review the VDOC's reasoning under the factors delineated in Turner v. Safley, 482 U.S. 78, 84 (1987). While Defendants do address the Turner factors for the current VDOC policy prohibiting commercial photographs, that policy is not relevant to the revoked institutional ban challenged in claim 7.

[6] To the extent Plaintiff sought photos of an "adult" nature that were precluded by the ban, Plaintiff was already prohibited from ordering or receiving such photos due to his pre-existing treatment plan. In December 2011, defendant Boyd, the Senior Psychologist at PSCC, created a Case Plan Agreement ("treatment plan") that, inter alia, prohibited Plaintiff "from viewing or possessing any publications, materials, or photos which may be detrimental to the treatment plan or that may promote deviant behaviors including sexually deviant behaviors." Case Plan Agt., ECF No. 47, page id. no. 820. The stated goal of the treatment plan was to address Plaintiff's "destructive sexual issues" due in large part to his "probable" criminal thinking observation, which indicates a lack of acceptance of responsibility for his crimes of aggravated sexual battery, unlawful filming/photography, and possession of child pornography. ECF No. 47, page id. no. 820. Plaintiff agreed to the plan on December 16, 2011.

Plaintiff challenged the treatment plan in claim 9, alleging that staff unlawfully enacted it as retaliation to prohibit him from possessing, inter alia, "adult" photos. However, I already determined that Plaintiff's challenge to the treatment plan was not properly filed because he failed to exhaust available administrative remedies about it. Consequently, I will not conduct a Turner analysis about the necessity of, or the specific restrictions in, a treatment plan for a convicted sex offender that prohibited, inter alia, "adult" photos.

5

Prison Legal News v. Stolle, No. 2:13cv424, 2015 U.S. Dist. LEXIS 43228, at *25-34, 2015 WL 1487190, at *8 (E.D. Va. Mar. 31, 2015) (collecting cases that found no precedent upholding the constitutionality of correctional policies banning items due to sexually suggestive, non-nude photos). Similar to Wall, the broader right of prisoners to receive mundane communications by mail under the First Amendment existed before Warden Young implemented the ban. See, e.g., Procunier, 416 U.S. at 408-09 (recognizing censorship of prison mail impacts the inmate's and society's First Amendment rights to communicate); see also Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874 (1997) (declaring it to be "perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment"). Accordingly, Warden Young is not entitled to qualified immunity. Because there is no dispute of material fact related to the commercial photo ban described in claim 7 and the law is in Plaintiff's favor, Plaintiff is entitled to judgment as a matter of law concerning Warden Young's ban.

B.

Liberally construed, Plaintiff argues that Regional Administrator Hinkle is also liable for Warden Young's ban because he supervises Warden Young and was informed of the ban.[7] To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative

---

[7] Defendants did not address the supervisory relationship between Warden Young and Regional Administrator Hinkle, but for the perspectives required on summary judgment, I must consider the VDOC's executive structure as having the regional administrator directly above a warden within the administrator's region, as is the case here.

6

causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must establish: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. at 373-74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. at 373.

For purposes of summary judgment, Plaintiff has established Hinkle's liability as a supervisor. Plaintiff has provided enough evidence, when viewed in the light most favorable to him, that Regional Administrator Hinkle had actual knowledge of the unconstitutional ban. Plaintiff appealed Warden Young's denial of a grievance about the unconstitutional ban to Hinkle. Hinkle read Plaintiff's regular grievance, which alleged, inter alia, that the ban lacked any reasonable penological goal and was unconstitutional; Warden Young's response, which evaded the constitutional challenge to the ban; and Plaintiff's appeal, which again alleged the unconstitutional nature of the ban. In his Level II response, Hinkle wrote:

> Your grievance appeal has been reviewed along with the Level I response and your original complaint. Your grievance ... has been investigated. Investigation revealed Warden Young posted a memorandum dated 3/27/2012 making the population aware that due to the institution[']s inability to verify vendors that sale [sic] commercial photos are licensed[,] the institution will no longer allow offenders to attempt to order commercial photos. Based on the information provided, I am upholding the unfounded decision of [Warden

7

> Young]. Memorandum by Warden Young 3/27/12 and [OP] 803.1 and 803.2
> govern[] this issue.

Pl.'s Ex. M at 9, ECF No. 8-12, page id. no. 252. Consequently, Plaintiff establishes, for purposes of summary judgment, that Hinkle's inaction to the ban was so inadequate as to show "deliberate indifference to" or "tacit authorization" of the ban. As a result of Hinkle's failure to intervene to invalidate his subordinate's absolute ban, Plaintiff was unable to exercise a First Amendment right to obtain photos that did not frustrate a legitimate penological interest. Accordingly, Plaintiff has established Hinkle's supervisory liability for purposes of summary judgment, and a jury must resolve the disputes of material facts as to Hinkle's actual deliberate indifference. See Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) ("[A] genuine dispute of material fact will preclude summary judgment on qualified immunity.").

C.

The other defendants to claim 7 – Walz, Garman, A. Robinson, and Clarke – are entitled to qualified immunity for claim 7 because Plaintiff fails to establish their personal conduct in the creation or execution of the ban. No specific acts or omissions relevant to claim 7 are alleged against A. Robinson and Director Clarke, Assistant Warden Walz merely responded to an informal complaint pursuant to the VDOC's administrative remedy program, and Assistant Warden Waltz's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006)).

D.

Plaintiff has requested $3,000 in compensatory damages and $6,000 in punitive damages for the ban. A plaintiff who alleges the violation of a constitutional right is not entitled to compensatory damages unless he can prove actual injury caused by the violation. Carey v. Piphus, 435 U.S. 247, 264 (1978). Notably, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." Memphis Cnty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986). "The measure of [compensatory] damages under § 1983 . . . is not a simple matter of applying damage formulas from tort law, or quantifying out-of-pocket expense . . . . [I]njury to a protected first amendment interest can itself constitute compensable injury wholly apart from any 'emotional distress, humiliation and personal indignity, emotional pain, embarrassment, fear, anxiety and anguish' suffered by plaintiffs." Piver v. Pender Cnty. Bd. of Ed., 835 F.2d 1076, 1082 (4th Cir. 1987). Furthermore, "[n]ominal damages may be awarded for any § 1983 violation." Id.; see Carey, 435 U.S. at 308 n.11 ("Our discussion of that issue makes clear that nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury[.]"); Kincaid v. Rusk, 670 F.2d 737, 745-46 (7th Cir. 1982) (allowing nominal damages of $1.00 for a denial of access to reading material in prison). Moreover, a jury may, but is not required to, "assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or [deliberate] indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) ("[T]he callous indifference required for punitive

9

damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim."). A punitive award may accompany either a nominal award or a substantial compensatory award. Piver, 835 F.2d at 1082.

Plaintiff has not established any personal financial damage from being precluded from ordering photos during the ban, and, unsurprisingly, he has not established a relevant physical injury from the six-month ban. Nonetheless, I defer to a jury to resolve the factual questions of injury and damages resulting from the ban. Accordingly, Plaintiff must prove an entitlement to damages to a jury.

## V.

Plaintiff has alleged generally that he experienced retaliation as a result of his trying to exercise his constitutional right to receive, in this instance, non-"adult" photos in contravention of the ban. See supra note 6. To succeed on a claim of retaliation, a prisoner must allege "that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Although Plaintiff describes retaliation throughout in the Complaint, he did not specify it in one of the many enumerated claims. Consequently, I must liberally construe the Complaint, which is a difficult undertaking due to the length of the claims, Plaintiff's narrative spanning many years, and his interaction with many different people for many different reasons.[8] See, e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Clodfelter v. Republic of Sudan, 720 F.3d 199, 212 (4th Cir. 2013) (recognizing the challenge of liberally construing statutes, let

---

[8] Although I liberally construe pro se complaints, I do not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

10

alone pro se complaints). Because Plaintiff's challenges to the ban began on April 2, 2012, when he filed an informal complaint on the issue, I use that date as the starting point for when retaliation could have begun on the surviving claim.[9]

After reviewing and liberally construing the Complaint, I find that Plaintiff states actionable claims of retaliation with sufficient showing of causation related to his attempts to challenge or evade the ban after April 2, 2012, against the following defendants in only the following two circumstances:

1. On May 29, 2012, Officer Sutphin, Institutional Investigator Cartwright, and Unit Manager Hall searched Plaintiff's cell and confiscated, or caused to be searched and confiscated, letters to and from Help from Beyond the Walls, which is a commercial adult-photograph vendor. The confiscation allegedly resulted in Plaintiff forfeiting a $50.00 refund he intended to recover from that vendor. Compl. ¶¶ 105-11.

2. On October 2, 2012, Senior Psychologist Boyd charged Plaintiff with "possession of contraband" for possessing pictures of female family members who appeared younger than 18 years of age although Boyd had reviewed, approved, and returned these images to Plaintiff's possession in February 2012. Id. ¶ 112. Because of Boyd's alleged retaliatiory charge, Plaintiff was convicted of the institutional charge, lost thirty days' recreation and telephone privileges, was not allowed to keep the family photos, and was ultimately transferred to the PSCC Structured Living Unit for 90 days. Id. ¶¶ 114, 137, 143. Also allegedly because of the conviction, Plaintiff suffered mental and emotional distress and sciatic nerve pain due to the lack of recreation. Id. ¶¶ 156, 158-59.

---

[9] Although Plaintiff suggests throughout the Complaint that defendants acted with a general retaliatory motive, I already determined that Defendants were entitled to summary judgment for all of Plaintiff's claims except claim 7. See, e.g., Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000) (recognizing a retaliation claim can succeed "only to the extent that the underlying claims ha[ve] merit"); Am. Civil Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) ("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation."). Other than the two claims, I do not find any other exhausted, causally-related claim of retaliation in the Complaint and its amendment for which a reasonable trier of fact could find in Plaintiff's favor. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) ("In the prison context, we treat such claims [of retaliation] with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." (internal quotation marks omitted)); Hughes v. Bedsole, 48 F.3d 1376, 1386 n.11 (4th Cir. 1995) (noting an inmate must allege facts showing that his exercise of constitutional rights was a substantial factor motivating the retaliatory action); Adams, 40 F.3d at 74 (noting conclusory allegations of retaliation are insufficient to state a claim); Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993) (noting the temporal proximity between an inmate's protected activity and the allegedly retaliatory, official action is simply too slender a reed on which to base a claim).

Consequently, these two claims of retaliation will proceed to a jury trial to resolve whether defendants Officer Sutphin, Institutional Investigator Cartwright, Unit Manager Hall, and Senior Psychologist Boyd are liable for the alleged acts of retaliation.

## VI.

For the foregoing reasons, I grant Defendants' motion for summary judgment as to the part of claim 7 against Walz, Garman, A. Robinson, and Clarke, and I deny it as to the part of claim 7 against defendants Young and Hinkle and claims of retaliation against Sutphin, Cartwright, Hall, and Boyd. All defendants except Young, Hinkle, Sutphin, Cartwright, Hall, and Boyd are terminated as defendants. Consequently, a jury trial is necessary to resolve questions of damages against Young, liability and damages as to whether Hinkle is liable as a supervisor for Young's ban, and liability and damages as to whether Sutphin, Cartwright, Hall, and Boyd unlawfully retaliated against Plaintiff. Because the events of this action occurred within the Abingdon Division of this court, this matter is transferred to the docket of the Honorable James P. Jones, United States District Judge for the Abingdon Division of this court.

ENTER: This 11th day of June, 2014.

/s/ Jackson L. Kiser
Senior United States District Judge